IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ANNA LOUISE SOUTHWORTH                                              PLAINTIFF


V.                                        NO. 13-2241


CAROLYN COLVIN                                                     DEFENDANT
Acting Commissioner of the Social Security Administration


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


Plaintiff, Anna Louise Southworth, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on May 2, 2011,

alleging an inability to work since August 14, 2010, due to frequent and severe headaches,

severe back pain increased to the point of not being able to walk, worsening skin cancer, and

memory loss.  (Tr. 14, 174, 211, 229).  An administrative hearing was held on May 17, 2012,

at which Plaintiff appeared with counsel and testified.  (Tr. 26-64).

By written decision dated August 28, 2012, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - degenerative disc disease and headaches.  (Tr. 14).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 17).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b).  The individual can lift/carry 20 pounds occasionally, 10 pounds frequently; can occasionally push/pull; frequently handle and finger with the left upper extremity and occasionally reach overhead bilaterally.

(Tr. 17).  With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform past relevant work as a general office worker or realtor.  (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 16, 2013.  (Tr. 1-4).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed briefs and this case is before the undersigned for report and recommendation.  (Docs. 13, 15).

## II.    Evidence Presented:

The first medical record subsequent to August 14, 2010, the alleged onset date, is dated August 17, 2010, when Dr. Brian Sims, D.C., provided Plaintiff with chiropractic treatment due to restriction, palpable tenderness, and edema in the cervical and thoracic spine.  (Tr. 490-491).  The treatment included using the adjustor for her spine and manual therapy to break down taught or fibrous muscle bundles in relevant muscle groups.  (Tr. 490-491).  On August 24, 2010, Dr.

-2-

AO72A
(Rev. 8/82)

Sims wrote that her initial care plan was one visit per week beginning on this date.  (Tr. 492-493).  Two days later, Plaintiff saw Mr. Robert Shook, M.S.N., N.P., telling him she could not get rid of her headaches.  (Tr. 542).  Mr. Shook prescribed Midrin and Trazodone as treatment. (Tr. 543).

On August 31, 2010, Plaintiff received more chiropractic treatment.  (Tr. 494-495).  The next record is also dated August 31, 2010, when Plaintiff returned to Dr. James Simons, Jr., M.D., for dermatologic care.  (Tr. 527).  An excision on her left calf of a one centimeter lesion was made.  (Tr. 527).  The surgical pathology report revealed superficial basal cell carcinoma with the margins negative for carcinoma.  (Tr. 532).  In addition, Dr. Simons considered using Aldara as treatment for superficial basal cell carcinoma on her left upper chest.  (Tr. 527).

From September 7, 2010 to October 26, 2010, the Plaintiff returned to Dr. Sims on a near weekly basis for chiropractic treatment.  (Tr. 496-509).  On September 7, 2010, Dr. Sims noted that she appeared to be regressing.  (Tr. 497).  On September 21, 2010, Plaintiff reported she was a little better after the last visit, but still very sore and also had headaches.  (Tr. 500).  The next week, she reported some improvement in the right shoulder area.  (Tr. 502).  During the same visit, Dr. Sims found she was progressing as expected.  (Tr. 503).  On October 12, 2010, however, Plaintiff reported her low back was sore after a long car ride and she had a lot of headaches.  (Tr. 504).  As a result, Dr. Sims noted that Plaintiff had regressed.  (Tr. 505).  In a record dated October 19, 2010, Dr. Sims reported Plaintiff had a re-injury date of October 14, 2010, that she had a hard time climbing stairs, and had bad headaches.  (Tr. 506).  The Plaintiff reported her headaches restricted her from performing routine daily activities, and even light activities aggravated her condition.  (Tr. 506).

-3-

On October 29, 2010, Plaintiff returned to Dr. Simons for a follow up dermatology appointment. (Tr. 528). Ten actinic keratosis sites on her body were treated with cryotherapy. (Tr. 528). Dr. Simons also wrote a prescription for Aldara to treat the left upper chest. (Tr. 528). A referral for Mohs surgery was not approved by her insurance. (Tr. 528).

From November 2, 2010 to December 9, 2010, Plaintiff again received regular chiropractic treatments from Dr. Sims. (Tr. 510-516). On November 15, 2010, she reported her low back pain had continually gotten worse, and Dr. Sims wrote that she had regressed. (Tr. 514-515). On December 9, 2010, Plaintiff returned to see Mr. Shook at Great Lakes Family Care, and was diagnosed with insomnia, anxiety, headache, and neck and back pain. (Tr. 541). She was prescribed Xanax and Cymbalta. (Tr. 541). During her chiropractic appointment the same day, she informed Dr. Sims of her new medication, Cymbalta. (Tr. 516). She also reported that she was sore all the time, especially if she tried to walk on the treadmill. (Tr. 516). Based on the records, Plaintiff's last chiropractic treatment with Dr. Sims during the relevant time period was on December 23, 2010. (Tr. 518-519).

On February 1, 2011, Dr. Simons treated two actinic keratosis sites on her abdomen and left upper back with cryotherapy. (Tr. 529). Plaintiff was given Aldara samples to use on her chest after her insurance did not cover the medication. (Tr. 529). On March 8, 2011, Plaintiff returned to see Dr. Simons after using Aldara for five weeks, and was instructed to continue the treatment for three more weeks. (Tr. 530). In addition, skin from the left posterior scalp was tested, and the pathology report revealed she had seborrheic keratosis. (Tr. 533). On March 10, 2011, Plaintiff presented herself to Mr. Shook, and he diagnosed her with headaches, advising her to continue Egsic and Xanax. (Tr. 539). On April 15, 2011, she cancelled her appointment

-4-

with Dr. Simons for April 18, 2011, because she was moving to Arkansas. (Tr. 530).

Beginning on April 21, 2011, Plaintiff went to River Valley Christian Clinic as a new patient for primary care. (Tr. 556). Ms. Shelly Daily, A.P.N., diagnosed her with neck pain, low back pain, headaches, genital herpes, estrogen replacement therapy, and a history of basal cell carcinoma. (Tr. 556). Results from laboratory studies on May 11, 2011 were within normal limits except for a marginally elevated mean corpuscular volume, and elevated cholesterol, triglyceride, and low-density lipoprotein cholesterol. (Tr. 555). The next record is dated May 19, 2011, when Plaintiff saw Dr. Stanley Teeter, M.D., telling him she has had chronic headaches for five years. (Tr. 614). Upon examination, she had tenderness at the base of the occiput with the left worse, and compression of the left occipital nerve that mimicked the pain she described. (Tr. 614). Plaintiff was diagnosed with nerve root irritation of the occipital nerve which was triggering the muscle tension spasm type headaches. (Tr. 614). Although Neurontin was recommended, Plaintiff stated it made her suicidal, and therefore she was given a trial of Amitriptyline instead. (Tr. 614). Dr. Teeter advised her to take Etodolac for pain relief, continue using her orthopedic pillow, take hot showers, and start a walking program. (Tr. 614).

On June 16, 2011, Plaintiff reported the generic form of Esgic caused constipation, and the prescription was changed to Esgic Plus. (Tr. 612). On June 7, 2011, Plaintiff reported that her medications were not working, and her low back pain had caused her to use a walker for assistance. (Tr. 611). She was diagnosed with muscle tension versus cluster headaches, gastritis, vaginal bleeding after intercourse, and acute keratosis. (Tr. 611). Her recommended treatment was neck muscle stretches, aloe vera juice, and she was prescribed Flexeril and Nabumetone. (Tr. 611). On August 4, 2011, Dr. William Barron, M.D., wrote that she had tried

-5-

virtually all the prophylactic medications for headaches and tolerated them well, except for the Flexeril treatments, which had not seemed to help. (Tr. 610). She has also had epidural steroid injections, MRI scans, pain clinic visits, and narcotics prescribed. Dr. Barron refilled Ibuprofen, 800 milligrams, for the Plaintiff, which seemed to help some with the headaches. (Tr. 610).

On August 8, 2011, Dr. Steve Shry, Ph.D., conducted a Mental Diagnostic Evaluation of the Plaintiff. The Plaintiff cited depression as her reason for applying for disability. (Tr. 565). She also reported taking Xanax, with no side effects. (Tr. 565). Dr. Shry observed during the evaluation that Plaintiff may have been under the influence of some substance or demonstrating side effects of Xanax, because of psychomotor retardation and some mild confusion. (Tr. 565). After inquiry, Plaintiff denied pain medication usage or even exaggeration of symptoms, and Dr. Shry noted that her symptoms improved. (Tr. 565). Dr. Shry wrote that it was difficult to adequately determine her intellectual functioning level due to the observed symptoms of confusion and memory loss. (Tr. 567). Based on the evaluation, it was unclear if Plaintiff met any diagnostic criteria as defined by DSM-IV. However, Dr. Shry noted the possibility of malingering, cognitive disorder, NOS, pain disorder, adjustment reaction, and/or personality disorder NOS, and histrionic and/or dependent traits could not be ruled out. (Tr. 567). Dr. Shry diagnosed Plaintiff as follows:

Axis I: diagnosis deferred on Axis I
Axis II: 799.9 diagnosis deferred on Axis II
Axis V: Global Assessment of Functioning score - 0 (unable to determine at this time)

(Tr. 567). As a result, Dr. Shry could not determine effects of identified mental impairments on adaptive functioning, due to lack of valid information. (Tr. 568).

On August 16, 2011, non-examining consultant Dr. Diane Kogut, Ph.D., completed a

-6-

Case Analysis form.  (Tr. 571).  Dr. Kogut wrote that Plaintiff had no recent mental health treatment, and the Mental Diagnostic Evaluation was not valid due to possible malingering, medication overuse, and symptom exaggeration.  (Tr. 571).  Dr. Kogut found her work history was inconsistent with a cognitive impairment.  (Tr. 571).  The last two primary care physician office visits in March and April 2011 did not indicate a mental diagnosis or cognitive impairment.  (Tr. 571).  She completed Function Reports with no problems and the reports were coherent.  (Tr. 571).  Dr. Kogut ultimately found Plaintiff's mental impairment to be not severe. (Tr. 571).

On August 17, 2011, non-examining consultant, Dr. Jonathan Norcross, M.D., completed a Physical RFC Assessment, and summarized some of the Plaintiff's medical records.  (Tr. 580). Dr. Norcross found the medical records supported a light RFC with limitations such as: push/pull occasionally with the left upper extremity and no overhead reaching with bilateral upper extremities currently and as of the date last insured.  (Tr. 580).

On September 1, 2011, Dr. James Carter, M.D., referred the Plaintiff to the local emergency room because she was complaining of a severe headache, and there was no injectable pain medication at the clinic.  (Tr. 608).  At the emergency room, she received Stadol, Phenegran, and Ativan.  (Tr. 587).  On October 6, 2011, Plaintiff complained of heart irregularity, headaches, and tingling in the fingers and hand.  (Tr. 607).  She was diagnosed with headaches, gastroesophageal reflux disease, skin cancer, and carpal tunnel syndrome of the left hand.  (Tr. 607).  On November 17, 2011, the Plaintiff was discharged from Egsic Plus use, and she was referred to dermatology because of an eyelid lesion.  (Tr. 604).  On December 1, 2011, she was diagnosed with muscle tension headaches, active keratosis, and fibromyalgia.  (Tr. 603).

-7-

The Plaintiff was referred to a neurologist, Dr. Wandal Money, M.D., because of her headaches. (Tr. 603). On January 19, 2012, she received a trigger point injection at each trapezius muscle. (Tr. 602). On January 31, 2012, a pathology report revealed seven basal cell carcinoma sites and one squamous cell carcinoma site. (Tr. 935). On April 5, 2012, the Plaintiff reported she had an allergic reaction to the trapezius injections. (Tr. 765).

On April 10, 2012, Plaintiff went to U.A.M.S. Medical Center, and was diagnosed with right upper lid basal cell carcinoma. (Tr. 622). Dr. John Pemberton, M.D., performed a right upper lid full-thickness reconstruction of less than one-fourth of the margin. (Tr. 622). Ten days later, Dr. Pemberton wrote that she was doing well, the right upper lid was well-healed, her vision was stable, and Plaintiff was happy with the result. (Tr. 621). On May 3, 2012, Dr. Carter noted that she has been diagnosed with fibromyalgia, and he refilled her Esgic and Aciphex. (Tr. 766). She was referred to physical therapy to try and reduce her pain. (Tr. 766). On April 25, 2012, Dr. Angela Styles, M.D., performed several shave biopsies. (Tr. 934). On July 19, 2012, Dr. Timothy Johnson, M.D., diagnosed her with menopause, a urinary tract infection, and headaches. (Tr. 976). She was prescribed Premarin and Bactrim, and the Esgic was refilled. (Tr. 976).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d

-8-

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the

-9-

national economy given her age, education, and experience.  See 20 C.F.R. § 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920.

## IV.   Discussion:

Plaintiff raises the following arguments on appeal: 1) The ALJ erred in failing to properly develop the record; 2) The ALJ erred by not considering the entire record in determining the Plaintiff's RFC; 3) The ALJ erred by failing to conduct a proper credibility analysis; 4) The ALJ erred in his Step Four determination because it was not supported by substantial evidence.  (Doc. 13).

### A.   Development of the Record:

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made).  This duty exist "even if ... the claimant is represented by counsel." Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir.1992) (quoting Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)).  The ALJ is not required to act as Plaintiff's counsel.  See Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); see also Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC.  If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to

-10-

address a precise inquiry to the physician so as to clarify the record.  See Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984).

The Plaintiff alleges that the ALJ did not consider the opinions of treating source, Dr. Marc Frick, M.D., medical source, Mr. Robert Shook, M.S.N., N.P., and non-examining source, Dr. William George, M.D.  (Doc. 13).  In the decision, the ALJ only refers to the medical opinions provided by state agency medical examiners, and finds their assessments to be consistent with his findings.  (Tr. 18).  The Court concurs with the ALJ's findings.  The assessments by Drs. Frick and George and Mr. Shook were made before the relevant period of review and should not be considered because of the prior ALJ decision dated August 13, 2010. (Tr. 258-263, 375-380).

Plaintiff also claims the ALJ failed to fully and fairly develop the record because he did not re-contact Dr. Frick and Mr. Shook to seek additional information or clarification regarding Plaintiff's ability to work.  (Doc. 13).  Plaintiff specifically alleges the ALJ should have questioned the treating sources on how side effects from medication would impact her physical limitations and to apply that information to the RFC.  There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis.  Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The ALJ considered the medical records provided by Dr. Frick.  (Tr. 15).  For instance, an office visit on March 17, 2010 showed that although she had a reduced range of motion of the neck, her extremities were normal.  (Tr. 15).  The opinion Dr. Frick provided less than a year prior cited severe limitations inconsistent with the supporting objective medical evidence.  (Tr. 258-263).  Dr. Frick stopped treating the Plaintiff prior to the alleged onset date, and it is

-11-

questionable how much further insight he could provide.  The Court finds it was not necessary to re-contact Mr. Shook because there was evidence during the relevant time period that showed Mr. Shook treated the Plaintiff for headaches. (Tr. 539, 541-543).  Mr. Shook prescribed various medications to her such as Midrin, Xanax, Cymbalta, and Egsic Plus, with no mention of side effects from the medications provided.  (Tr. 539, 541-543).

The need for medical evidence, however, does not require the [Commissioner] to produce additional evidence not already within the record.  "'[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'"   Howard v. Massanari, 255 F.3d 577, 581 (8th Cir.2001) (quoting Frankl, 47 F.3d at 937–38) (alterations in original).  The record in this case comes from multiple sources that support the ALJ's decision without having to rely on more evidence provided by Dr. Frick and Mr. Shook.  Based on the foregoing, there is sufficient evidence to support the ALJ's determination.

### B.    RFC Determination:

RFC is the most a person can do despite that person's limitations.   20 C.F.R. § 416.945(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 416.945(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 74 (8th Cir. 2001).  Therefore, an ALJ's

-12-

determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353, F3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC."  Id.

The Plaintiff alleges the ALJ erred in failing to consider Plaintiff's limitations related to headaches, skin cancer, fatigue, and side effects of medication.  (Doc. 13).   In the decision, the ALJ explicitly stated that "after careful consideration of the entire record," he made the following RFC determination.  (Tr. 17).  The Court concludes the ALJ's RFC determination is supported by substantial evidence as exemplified by the ALJ's discussion of the medical records at length in the decision.  See Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (ALJ is responsible for determining RFC, and must base determination on medical evidence that addresses ability to function in workplace; ALJ should consider medical records, observations of treating physicians and others, and claimant's own description of her limitations).

For instance, the ALJ acknowledged her long history of skin cancer, but found there was no evidence that the biopsies, however painful, would cause her to miss an extended period of work as she testified to at the hearing.  (Tr. 16).  Further, the ALJ limited the Plaintiff to light work with additional limitations, and such a restrictive RFC shows he accommodated Plaintiff's limitations imposed by her impairments.  (Tr. 17).  The opinion Plaintiff references in her brief from Dr. John Stratton, D.O., was provided in 2008, and the Court finds it was not indicative of her disability status during the relevant time period.  (Doc. 13, Tr. 421).  To the extent the Plaintiff is challenging the ALJ's RFC determination, the Court finds there is substantial evidence to support the RFC determination.  See Guilliams v. Barnhart, 393 F.3d 798, 803 (8th

-13-

Cir. 2005) (RFC must be supported by some medical evidence).

      **C.**    **Credibility:**

      The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints, including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322(8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966(8th Cir. 2003).

      Plaintiff claims the ALJ cannot dismiss her testimony about pain without making a credibility determination, arguing he did not do a proper Polaski analysis. (Doc. 13). If "the ALJ did not explicitly discuss each Polaski factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... an arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir.1987)).

      A review of the ALJ decision shows a somewhat limited credibility analysis, with the most attention given to her various activities of daily living. (Tr. 18). The Court concurs with

-14-

the ALJ and finds her daily activities indicate she is able to do more than she has alleged. Nevertheless, the Court can ascertain enough additional inconsistencies in the record to discount Plaintiff's subjective complaints.   For example, the Plaintiff was referred to a neurologist because of her headaches, but she did not follow through with the referral despite complaining of headaches with no relief.  (Tr. 603).  This indicates her impairment was not as severe as she initially alleged if she did not seek the specialized treatment offered to her.  Plaintiff argues that lack of finances should not detract from her credibility.  (Doc. 13).  Without evidence that she has been denied medical treatment due to financial constraints or that she attempted to obtain low cost or no cost treatment, the argument will not succeed.  See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992).

Plaintiff also testified that she experienced multiple side effects to her medications, but she did not report side effects of the same severity in the medical records.  (Tr. 45-46).  In addition, Dr. Shry noted during the Mental Diagnostic Evaluation that the possibility of malingering could not be ruled out.  (Tr. 567).  Dr. Shry wrote that the Plaintiff exhibited psychomotor retardation and some mild confusion, but after he inquired about pain medication usage or even exaggeration of symptoms, she denied both, and her symptoms then improved. (Tr. 565).  The ALJ does detail this possibility of malingering earlier in the decision.  (Tr. 16). Based on the foregoing, the Court finds any error in the credibility analysis to be harmless.

### D.      Step Four Determination:

An individual is not disabled if they retain the capacity to perform either their past relevant work as it was actually performed, or as it is generally performed in the national economy.  Evans v. Shalala, 21 F.3d 832, 833-834 (8th Cir. 1994) (quoting SSR 82-61 (1982));

AO72A
(Rev. 8/82)

see also 20 C.F.R. § 404.1560(b)(2).  The vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments.  See Haley v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010).

The Plaintiff argues the ALJ must make explicit findings regarding Plaintiff's past relevant work.  (Doc. 13).  The Court disagrees with the Plaintiff's argument.  The ALJ posed a hypothetical question that was within the purview of the RFC found in the decision, and the VE testified that the Plaintiff's past work would fall within those parameters.  (Tr. 61).  The Court finds that the ALJ properly determined that the Plaintiff could return to past relevant work as a general office worker or realtor.  (T. 18).

The Plaintiff also alleges that the ALJ did not include in his questioning to the VE the stress level of the job or the non-exertional requirements of the job.  (Doc. 13).  Since there is no evidence in the record that supports such limitations, and the Court supports the ALJ finding that there are no severe mental impairments, such questioning is not required.  (Tr. 14).  Based on the foregoing, the ALJ did not err in the conclusion that the Plaintiff could perform her past relevant work.

## V.    Conclusion:

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

-16-

DATED this 25th day of September, 2014.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)